[ *409 ]         *THE PEOPLE *vs.* SALISBURY.

The common council of a city, incorporated as such *subsequent* to 1st January, 1830, have no power under the *general act* to determine and limit the number of *commissioners of deeds* to be appointed in such city; the power is confined to the *common councils* of cities created previous to that date: and *accordingly it was held* that the appointment of a *commissioner of deeds* by the governor, with the advice of the senate, for a city incorporated since 1st January, 1830 was not a valid appointment.

INFORMATION in the nature of a *quo warranto*. On the third day of July, 1840, the attorney general filed an information in the nature of a *quo warranto* against the defendant, charging him with having usurped and exercised the office of a *commissioner of deeds* in the city of *Buffalo*, without lawful authority on the 15th May, 1840, and from thence until the time of the exhibition of the information. The defendant pleaded that on 29th December, 1839, the *common council* of the city of Buffalo, at a regular and legal meeting of the board, by resolution *limited* the number of commissioners to be appointed in the city of Buffalo, so that there should be in the said city *seven commissioners of deeds* including those then in office; that at the time of the adoption of such resolution, there were residing in Buffalo two commissioners of deeds who had been theretofore duly appointed *for the town of Buffalo*, and that there were no more commissioners of deeds in office in the city of Buffalo at the adoption of such resolution; that a copy of the resolution was duly transmitted to the governor of the state, and that on the 21st January, 1840, the defendant was duly appointed by the governor, by and with the advice and consent of the senate, a commissioner of deeds of the city of Buffalo. That the commission was duly filed in the clerk's office of the county of Erie; and that on the 28th January, 1840, he took and subscribed the oath of office; and that by reason of the premises he had claimed, and had used and exercised the office of commissioner of deeds for the city of Buffalo, as it was lawful for him to do, traversing the usurpation, &c. To this plea the attorney general demurred, and the defendant joined in demurrer.

[ *410 ]    *Willis Hall,* (attorney general,) for the people.

*N. K. Hall,* for the defendant.

Albany, October, 1840.—The People v. Salisbury.

*By the Court,* NELSON, Ch J. The city of Buffalo was incorporated in 1832, *Statutes of that year, p.* 297, and the *common council* of the city were empowered to appoint various officers for the orderly and convenient government of the place. No authority, however, was given for the appointment of commissioners of deeds, nor is any thing found in the act of incorporation in any manner relating to that office.

The 1 *R. S.* 92, § 2, provides, that the common council of each of the cities in this state, (except the city of New-York,) on or before the first day of January, 1830, and once at the end of every two years, shall determine and limit the number of commissioners of deeds to be next appointed for their respective cities. This power had been previously referred to in the classification of public officers, *p.* 88. The appointment is made by the governor and senate, *p.* 98, § 15. The defendant has been regularly appointed under this last section, and the question is, whether the provisions are applicable to this city.

The power to create public offices, or to multiply the number of officers, is a high and responsible one, and should not be exercised unless under a clear warrant from the proper authority. The annual session of the legislature affords a speedy remedy for any inconvenience that may arise from a cautious exercise of the power. Neither should courts give to a statute a broad and unrestricted application, however convenient to the public, when by its terms it is apparently confined to particular objects. The distinction between acts of general application, and those of a limited and particular design, is familiar and easily expressed. Taking the latter view of the section before us, § 2, *p.* 92, every part of it becomes material and pertinent, and was essential to express the intent we suppose the legislature had in view. It had previously fixed the limit of these officers in the city of New-York, *p.* 88, and was providing *for the like in the [ *411 ] other cities. The several acts were passed in 1828, and it was practicable, therefore, to declare that the common councils of the cities then existing, on or before the 1st January, 1830, (when the acts went into operation,) and once every two years thereafter, should determine the number of commissioners to be appointed. But the language can only be applicable to cities existing anterior to January, 1830. The common council of such only could meet and execute the power conferred; not cities created two years afterwards. These alone must have been in the mind of the legislature, as the terms necessarily exclude those that might subsequently come into existence. The 9th section carries out the same view. It vacates the offices of present incumbents in cities on the 1st January, 1830. In support of this limited construction we may also refer to the familiar principle, that corporations are creatures of the statute, and possess no powers except those expressly given or which are necessary to carry into effect the purpo-

ses for which they were created. Clearly, no such powers as are here claimed for this city, are any where expressed, nor can we see any ground for raising them by implication.

Judgment for plaintiffs.